UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

TANSHANNY WRIGHT,

Plaintiff,

v. Case No. 4:18cv597-MW-HTC

BRITTANY ABLE,

Defendant.
_______________________/

ORDER and REPORT AND RECOMMENDATION

Plaintiff, Tanshanny Wright, proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, for malicious prosecution against Defendant Brittany Able, arising out of an arrest that occurred in April 2017. ECF Doc. 18. The matter is before the Court on Able's motion to dismiss (ECF Doc. 32). Wright was given an opportunity to respond to the motion and filed an unsigned motion to strike (ECF Doc. 36), which this Court will construe as an opposition to the motion to dismiss.[1] Upon consideration, the undersigned respectfully recommends that Able's motion to dismiss be GRANTED.

[1] The motion to strike contains lists seven (7) reasons why the motion to dismiss should be denied rather than offer any basis for "striking" the motion to dismiss, such as being untimely, containing extraneous materials, etc.

## I. BACKGROUND

Wright is an inmate of the Florida Department of Corrections ("FDOC"), currently confined at Mayo Correctional Institution Annex.[2] Defendant Able is a Tallahassee detective. Wright's amended complaint sets forth the factual allegations that follow, which come from his summation of the events in question and Able's probable cause affidavit. ECF Doc. 18; 32-1.

On April 1, 2017, a female listed a hoverboard for sale on Facebook. A potential buyer, "E.B", responded to the ad, and they agreed to meet at an apartment so he could buy the hoverboard. "The female responded that she would get a ride from her sister [to] the apartment." *Id.* at 5. During the sale of the hoverboard, a male approached E.B. from behind, pointed a silver revolver at him and stated, "give it up" and "lay it down." *Id.* E.B. ran away in fear and the perpetrator fired "four to six shots" at him as he ran. *Id.*

"Through investigation, Detective Brittney Able learned that the female whose profile advertised the hoverboard for sale ad" was also a suspect in the hoverboard burglary case.[3] *Id.* at 5. The female was R'Rionna Godwin ("Godwin").

---

[2] Plaintiff is serving a life sentence for convictions unrelated to his allegations in this case. *See* http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=N26550&TypeSearch=AI.

[3] Although in one place in his amended complaint Wright describes Godwin's burglary case as "unrelated," it appears based on statements in other parts of Wright's amended complaint and in

Able called Godwin's mother to bring her to the police station where she was given her *Miranda* rights and confronted about the pending burglary charge.[4] "To escape prosecution" and "in exchange for immunity," Godwin "fabricated" that her sister used Godwin's Facebook profile to post the hoverboard ad and that her sister and Wright, who was her sister's boyfriend, tricked Godwin into going with them to an apartment to sell the hoverboard (to E.B.). *Id.* at 6.

Based on Wright's reading of Able's affidavit, he contends the victim, E.B., contradicted Godwin's statements by identifying Godwin as the same person from her Facebook profile, the person he spoke with on the phone prior to the sales transaction taking place, and the person who was at the apartment at the time of the shooting. Thus, Wright disputes Able's statement in the affidavit that Godwin's story was "confirmed by independent witness statements and evidence". ECF Doc. 18 at 7. He also alleges that Able "promised [Godwin] immunity from the burglary in exchange for fabricated affidavit claiming Wright was the shooter," and that he only learned of this promise while in jail and awaiting trial. *Id.* at 8. He further alleges that "to achieve framing Wright for the shooting," Able showed Godwin and

---

his motion to strike that he is actually referring to Godwin being a suspect in the same hoverboard case involving Wright.

[4] According to the probable cause affidavit, the victim identified the hoverboard ad as placed by a Facebook page named "Rockoutt RG", which Able used to identify as belonging to 15-year old R'Rionna Godwin.

her mother Wright's booking photo, which she used to identify Wright as the shooter. *Id.*

Wright was arrested on April 13, 2017 on charges of attempted homicide, attempted armed robbery and criminal mischief. ECF Doc. 18 at 11. He pleaded not guilty to the charges and was denied bail. *Id.* The charges were subsequently nolle prossed on October 1, 2018.[5] *Id.*

Based on the foregoing, Plaintiff alleges Defendant Able violated his rights under the Fourth and Fourteenth Amendments[6]. ECF Doc. 18 at 12. As relief, he seeks $200,000 in punitive damages and $200,000 in compensatory damages. *Id.*

## II.  LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state

---

[5] The case was nolle prossed because "the State [wa]s unable to secure [the victim's] presence at trial", "a vital witness is uncooperative", and because Wright "has been sentenced to life in prison in a prior case." ECF Doc. 32-2 (Nolle Prosequi). The fact that the arrestee was never prosecuted, or the charges were dropped, or the arrestee was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause. *Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002); *Lee v. Ferraro*, 284 F.3d 1188, 1195–96 (11th Cir. 2002); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990).

[6] The undersigned discuses only the Fourth Amendment claim herein because Wright's claim under the Fourteenth Amendment based on malicious prosecution is foreclosed by the Fourth Amendment. *See Richardson v. Bradley*, No. 3:17cv921RV-EMT, 2019 WL 1560724, at *14 (N.D. Fla. Mar. 25, 2019) ("if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"), *report and recommendation adopted*, 2019 WL 1559560 (N.D. Fla. Apr. 10, 2019), *appeal dismissed sub nom. Richardson v. Pensacola Police Dep't*, 2019 WL 3814335 (11th Cir. July 10, 2019).

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).

## III. JUDICIAL NOTICE

Both parties rely on Able's probable cause affidavit to support their respective positions. Although Wright disputes that it establishes probable cause for his arrest, he does not dispute its authenticity. Additionally, Wright quotes from it throughout the complaints and even relies on it to support his position that Godwin lied. The Court attached the affidavit to its July 17, 2019, Order, giving Wright an opportunity to amend his complaint (ECF Doc. 16 at 11-14). Also, Able attached the affidavit to her motion to dismiss.

Thus, as an initial matter, the undersigned will take judicial notice of the affidavit and consider it for purposes of deciding Able's motion to dismiss. *See* Fed.

R. Evid. 201. "The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it." *See e.g., United States v. Berrojo*, 628 F.3d 368, 369 (5th Cir. 1980)). Additionally, a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. "'Undisputed' in this context means that the authenticity of the document is not challenged."[7] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## IV. DISCUSSION

Under 42 U.S.C. §1983, an individual who has been deprived of a right guaranteed to him by the Constitution or laws of the United States under color of state law has a right to seek appropriate relief in a United States District Court. The Fourth Amendment provides "the right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV.

Wright can state a cause of action for malicious prosecution in violation of the Fourth Amendment by alleging facts supporting the following elements: "(1) a

---

[7] Under the same authority, the Court can take judicial notice of the Nolle Prosequi, *see supra,* fn. 4.

criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003) (citations omitted); *see also, e.g., Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). Because one of the elements of a malicious prosecution claim is the absence of probable cause, the existence of probable cause is an absolute bar to Wright's suit. *See Holt v. U.S. Atty. Gen.*, 486 F. App'x 97, 99 (11th Cir. 2012).

"For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citation omitted). An arrest is objectively reasonable when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995).

Probable cause does not require proof beyond a reasonable doubt or even by a preponderance of the evidence. *See, e.g., Lee*, 284 F.3d at 1195. Instead, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. It is not a high bar." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). Moreover, "[b]ecause probable cause deals with

probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby,* — U.S. —, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018). It is Wright's burden to show that probable cause did not exist. *See Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir. 1998).

Although a violation of the Fourth Amendment can form the basis of a § 1983 action, Able argues that she is immune from lability. Qualified immunity protects government officials performing discretionary functions[8] (such as Able) from suits in their individual capacity unless their conduct violates a constitutional right which was "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Manners v. Cannella*, 891 F.3d 959, 968 (11th Cir. 2018) (an arresting office is entitled to qualified immunity unless plaintiff establishes that (1) the officer violated a federal statutory or constitutional right and (2) the unlawfulness of her conduct was clearly established at the time). "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable

[8] The first step in establishing qualified immunity is for the defendant to show that she was acting within the scope of her discretionary authority at the time of the alleged misconduct. *See e.g., Oliver v. Fiorini*, 586 F.3d 898, 905 (11th Cir. 2009). Once that step is met, the burden then shifts to the plaintiff to show the grant of qualified immunity is inappropriate. *See McCullough*, 559 F.3d at 1205. There is no dispute here that Able was acting within her scope of discretionary authority as she interviewed Godwin and executed the probable cause affidavit in her role as a detective for the Tallahassee police investing a burglary.

person would have known." *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir.2009), *quoting Lee*, 284 F.3d at 1193-94.

In the context of the Fourth Amendment, qualified immunity applies if an arrest was supported by *arguable* probable cause. *See Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) ("[W]hen an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had arguable probable cause to make the arrest." (internal quotation marks omitted)). Arguable probable cause exists where reasonable officers possessing the same knowledge and in the same circumstances could have believed probable cause existed to arrest, even if ultimately that belief was mistaken. *Id.; Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). In other words, "qualified immunity still applies if the officer reasonably but mistakenly believed that probable cause was present." *See Grider*, 618 F.3d at 125.

The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation and to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Poulakis*, 341 F. App'x at 525. Thus, "questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'" *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir.2003) (citations

omitted). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.' " *Gonzalez,* 325 F.3d at 1233 (citation omitted).

The crux of Wright's amended complaint is that Able's affidavit failed to provide sufficient probable cause for his arrest. Wright alleges that Godwin fabricated her statements against Wright in exchange for immunity on an unrelated burglary charge. Wright also alleges Able made misstatements in the probable cause affidavit to implicate Wright. These allegations, however, even if true, read liberally and viewed in the light most favorable to Plaintiff, do not negate a finding of either probable cause or arguable probable cause.

**A. Godwin's Alleged Fabrications**

Wright argues Able's affidavit was based on statements made by an "unreliable" witness – Godwin. He alleges Godwin "fabricated" her story implicating Wright as the shooter "to escape prosecution." ECF Doc. 18 at 6, 7, 8. He says that Godwin's statements (which he refers to as her affidavit) were "perjured," and false. *Id.* at 8. He claims that because Able confronted Godwin with the pending burglary charge, Godwin was "motivated" "to frame" Wright "by false affidavit." *Id.* at 10.

In his motion to strike, Wright offers the following seven (7) reasons for this Court to deny the motion to dismiss: (1) Able "based probable cause off of hearsay" from Godwin, who was a suspect in the same crime; (2) it was Godwin (and not her sister) who initiated the robbery on Facebook; (3) there were inconsistent statements from the witnesses; (4) probable cause came from Godwin, whose testimony was unreliable; (5) Able violated his constitutional rights and therefore cannot benefit from qualified immunity; (6) there was no probable cause for his arrest; and (7) there was no evidence that Wright was at the scene. ECF Doc. 36. All these reasons are premised on Godwin's lack of credibility.

Although it appears that Wright firmly believes Godwin lied to Able to "escape" her own burglary charge, the fact that Godwin lied to Able is not sufficient to negate a finding of probable cause. Wright has alleged no facts in his amended complaint or in his response to the motion to dismiss from which the Court can reasonably infer that Able knew Godwin was lying and nonetheless included statements from Godwin in the affidavit. Read liberally, at best Wright seems to insinuate that Able should have known that Godwin was lying by the mere fact that Godwin was also a suspect in the same offense and thus had reason to lie. Such insinuation is a conclusory assertion, insufficient to overcome a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *See Real v. City of Fort Myers*, 787 F. App'x 624 (11th Cir. 2009) (affirming dismissal for failure to state a claim in malicious prosecution

case alleging lack of probable cause due to fabricated evidence and conspiracy to distort facts).

Wright has alleged no actual facts from which this Court can reasonably infer that Able knew Godwin was lying. Moreover, Able did not simply take Godwin's statements at face value. Instead, her affidavit includes statements given by other witnesses and the victim during interviews conducted by other investigating officers. ECF Doc. 16 at 12-14. Officer E. Certain, for example, interviewed witness S.P., who "advised he saw an exchange between a guy with dreads and a guy with green shorts (victim) and another boy with dreads." *Id.* S.P. confirmed that the boys were "doing an exchange for what appeared to be a hover board." *Id.* Witness A.S. also advised that he saw two black males running, and one was "wearing light blue shorts and a light gray or white short with a short afro." *Id.*

Consistent with the information provided by those two witnesses, the victim, E.B., described the male suspect who shot at him as "a black male around 25-30 years old," "approximately 5'7, 140 pounds wearing a grey and white shirt with light blue shorts" and "had short dreads described as a 'pineapple' hair style." ECF Doc. 16 at 12. Officers discovered several possible bullet impacts on the ground and in the side of a vehicle, which matched the information they were given by the victim. Also, the victim's physical description of the shooter matched that of Wright. ECF

Page 13 of 20

Doc. 32-1 at 3 (Able's affidavit states that, "[i]t should be noted; Wright closely matches the description provided by the victim").[9]

Although, the victim was unable to identify Godwin or Wright by photo and not all witnesses identified someone at the scene matching Wright's description, those discrepancies do not negate a finding of probable cause. Not every piece of evidence has to corroborate a charge in order for there to be probable cause. "In deciding whether probable cause exists, arresting officers are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Arnold Rogers v. City of Orlando, Fla.*, 660 F. App'x 819, 825 (11th Cir. 2016).

Also, although Wright argues EB's statements were contrary to those of Godwin, they were not. EB stated the hoverboard ad was posted on a Facebook Page for "Rockoutt RG". Godwin stated that her sister used Godwin's Facebook page to post the ad. EB identified Godwin as the person he met at the apartment. Godwin does not dispute having been at the apartment.

Able's affidavit shows sufficient probable cause and, at a minimum, arguable probable cause, to arrest Wright. As stated above, it contains statements from other

---

[9] *See also*, https://www.rapsheetz.com/florida/doc-prisoner/WRIGHT__TANSHANNY/N26550 (Wright is identified as a black male who is 5'8, 160 pounds and twenty-six years old).

witnesses and the victim's description of the shooter matched that of Wright. *See Banks v. Bostic*, No. 17-13986, 2018 WL 1158306, at *2 (11th Cir. Jan. 10, 2018) ("an eyewitness's identification of a perpetrator is ordinarily sufficient to establish probable cause for an arrest"); *Rankin v. Evans*, 133 F.3d 1425, 1440 (11th Cir. 1998) ("[the investigator] was entitled to rely to a meaningful degree on [the victim's] statements in determining the existence of probable cause"). Looking at the "totality of the circumstances," the undersigned finds as a matter of law that Able's affidavit was sufficient probable cause (and arguable probable cause) to arrest Wright. *Lee*, 284 F.3d at 1195; *Paez*, 915 F.3d at 1288 (affirming dismissal of Fourth Amendment claim on finding of probable cause).

**B. Able's Alleged Misstatements**

As to Able, Wright alleges that "[t]o fabricate probable cause in affidavit to arrest Wright, Brittany Able misstated [in her affidavit]" that "since" speaking with Godwin, Godwin has "since" been developed as a suspect in the hoverboard burglary. ECF Doc. 18 at 9. Wright contends Able called Godwin in for questioning for the burglary and it was only after Godwin was faced with that charge that Godwin implicated Wright. He also alleges Able "recklessly" stated, in her probable cause affidavit, that the affidavit was confirmed by "independent witness statements and evidence at the scene" (when it was not). *Id.* at 7. Finally, Wright alleges that "[t]o achieve framing Wright for the shooting," Able showed a booking photo of Wright

to Godwin and her mother for purposes of identifying Wright as the shooter. *Id.* at 8. Wright contends Able's affidavit is, thus, insufficient to establish probable cause because Able "promised [Godwin] immunity from the burglary [charge] in exchange for fabricated affidavit claiming Wright the shooter." *Id.* at 7-8.

As an initial matter, officers may not lie about or conceal critical information. Thus, intentional or reckless material misstatements or omissions in a warrant affidavit can violate the Fourth Amendment.[10] *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994). But to do so, those "misstatements" must be material to the probable cause determination. *See Franks v. Delaware*, 438 US. 154, 156 (1978).

In *Franks,* the Court held that if an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause. *Id.* at 171–72. The holding in *Franks* applies to omissions as well. *United States v. Thompson,* 615 F.2d 329 (5th Cir.1980). If probable cause still exists once the misrepresentations are taken out of the warrant and the omissions are inserted, there is no *Franks* violation. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013); *United States v. Lebowitz*, 676 F.3d 1000, 1010–11 (11th Cir. 2012).

[10] Negligent misstatements or omissions do not violate the Fourth Amendment. *Kelly v. Curtis*, 21 F.3d at 1555.

Page 16 of 20

The Eleventh Circuit has employed a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment. First, the Court should determine whether there was an intentional or reckless misstatement or omission. Then, the Court should examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included. *See United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986) ("[W]e must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." (citing *Franks*, 438 U.S. at 156).

Because at this stage of the proceedings the Court must accept the facts as alleged by Plaintiff to be true, the undersigned takes as true that Able intentionally or recklessly misstated the timing of when she learned Godwin was also a suspect in the burglary. Thus the question for the Court for purposes of this motion to dismiss is whether Able's affidavit would have established probable cause or arguable probable cause to arrest Wright for burglary if the affidavit had stated that Godwin was confronted with the burglary charge, given her Miranda rights, and then implicated Wright as the shooter. The undersigned finds that it would.

Page 17 of 20

While the fact that Godwin was facing a charge for burglary may be relevant, whether Able learned of that fact before interviewing Godwin, while she was interviewing Godwin, or after the interview concluded is not relevant to the determination of probable cause. As stated above, Able's affidavit did not rely solely on Godwin's statements, and Godwin's statements were corroborated by at least some statements given by other witnesses as well as the victim. Thus, other information described in the probable cause affidavit still would have led a reasonable officer to believe that Wright was involved in the burglary and shooting, even had there been any credibility issues raised about Godwin. *See Paez*, 915 F.3d at 1288 (applying *Franks* to find probable cause in affirming dismissal). Indeed, a determination of probable cause was independently determined to exist by the Assistant State Attorney who signed the affidavit approving a finding of probable cause and the First Appearance Magistrate, who also signed the affidavit, finding the "probable cause [to be] sufficient." ECF Doc. 32-1 at 4.

Similarly, the undersigned finds that Wright's allegations regarding Able's use of the booking photo to "frame" him and her "reckless" statement that Godwin's statements were "confirmed by independent witness statements and evidence at the scene" do not negate a finding of probable cause or arguable probable cause under *Franks*. The use of the photo was perfunctory and not relevant to a determination of probable cause. Godwin already knew what Wright looked like and who he was

because Wright was dating Godwin's sister at the time, and they have a child together. In other words, even without the photo, Godwin would have been able to name Wright as the shooter.

Finally, to the extent Wright takes issue with Able's failure to disclose Godwin's alleged immunity in the affidavit; for the same reasons set forth above, such omission is also not material to a determination of probable cause or arguable probable cause. Whether Godwin received immunity for her cooperation goes to her credibility and is considered against the backdrop of the other statements and evidence relied upon by Able in her affidavit. *See United States v. Martin*, 615 F.2d 318, 325, 329 (5th Cir. 1980) (affirming the use of a probable cause affidavit, which did not disclose that an informant had been granted immunity from prosecution, because the affidavit as a whole was sufficient to support the arrest). The fact that she received immunity, alone, even if disclosed, would not preclude probable cause or arguable probable cause. If it did, there would be no probable cause on any affidavits or warrants that rely on information from a confidential informant.

As stated above, probable cause is not a high standard and arguable probable cause requires even less. The undersigned simply does not find that Able's affidavit "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*, 475 U.S. at 344. Wright even acknowledges that the

information Able learned was through "investigation." Thus, the undersigned finds that Able is entitled to a dismissal of this action.

## V. CONCLUSION

Generally, the Court should not dismiss an action without affording a plaintiff, particularly one proceeding *pro se*, an opportunity to amend the complaint. In this case, Wright has already been given an opportunity to amend his complaint, which he did. Additionally, he was given an opportunity to respond to the motion to dismiss, which he did. Thus, the undersigned finds that an additional amendment would be futile given the undersigned's finding that there was sufficient information in Able's affidavit to, at a minimum, establish arguable probable cause, even if Able's alleged "misstatements" were corrected.

Accordingly, it is ORDERED, that:

1. Wright's motion to strike be terminated.

It is also respectfully RECOMMENDED, that:

2. Able's motion to dismiss be GRANTED.

3. The clerk be directed to close this file.

DONE AND ORDERED this 5th day of February, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.